**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff and the Putative Classes*

[Additional counsel listed on signature page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANSCICO DIVISION

| | |
|---|---|
| LINDA CHESLOW, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | 1. VIOLATION OF UNFAIR COMPETITION LAW (CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*) |
| S.C. JOHNSON & SON, INC., | 2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *ET SEQ.*) |
| Defendant. | 3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *ET SEQ.*) |
| | 4. UNJUST ENRICHMENT |
| | **DEMAND FOR JURY TRIAL** |

1
2

**TABLE OF CONTENTS**

Page No.

I.      INTRODUCTION ............................................................................................... 1

II.     JURISDICTION .................................................................................................. 9

III.    VENUE ................................................................................................................ 9

IV.     DIVISIONAL ASSIGNMENT ........................................................................... 9

V.      PARTIES ........................................................................................................... 10

        A.      Plaintiff ................................................................................................... 10

        B.      Defendant ............................................................................................... 11

VI.     FACTUAL ALLEGATIONS ............................................................................ 12

        A.      The Avoidance of Microplastic Consumption is Material to Consumers................. 12

        B.      The Products Are Made of Polyethylene and Polypropylene Plastic and Consumers Are Intended, Directed and Instructed to Microwave and Freeze the Products ........ 16

        C.      The Affirmative Misrepresentations and Material Omission Mislead Reasonable Consumers About the Products' Integrity and Conceal the Material Risk ............... 20

        D.      Plaintiff and Reasonable Consumers Were Misled by the Material Omission and "Microwave Safe" and "Freezer" Misrepresentations When Purchasing the Products ................................................................................................... 21

        E.      The Products are Substantially Similar ................................................. 25

        F.      No Adequate Remedy at Law ................................................................ 26

        G.      Fed. R. Civ. P. 9(b) Allegations *(Affirmative and By Omission)* ............................ 28

VII.    CLASS ACTION ALLEGATIONS ................................................................. 29

VIII.   CAUSES OF ACTION ..................................................................................... 32

COUNT ONE ................................................................................................................ 32

COUNT TWO................................................................................................................ 41

COUNT THREE ............................................................................................................ 43

COUNT FOUR .............................................................................................................. 46

IX.     PRAYER FOR RELIEF .................................................................................... 47

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

X.    DEMAND FOR JURY TRIAL.................................................................................... 48

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

## COMPLAINT

1.     Plaintiff Linda Cheslow ("Plaintiff"), individually and on behalf of all others similarly situated, as more fully described herein (the "Class" and "Class Members"), brings this class action complaint against Defendant S.C. Johnson & Son, Inc. ("Defendant" or "S.C. Johnson"), and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.     **Overview**. Defendant affirmatively markets its Ziploc bags and containers (the "Products") as "Microwave Safe" and suitable for "Freezer" use, creating the reasonable impression that they are fit for use in the microwave and freezer. In reality, these Products are made from polyethylene and polypropylene—materials that scientific and medical evidence shows release microplastics when microwaved and frozen—making them fundamentally unfit for microwave and freezer use. Relying on Defendant's false misrepresentations, individuals have unwittingly exposed themselves and their families to undisclosed microplastics during routine kitchen practices. Defendant has compromised its Products' integrity for profit and to gain an unfair competitive edge in the marketplace.

3.     **Material Risk and Material Omission**. Defendant fails to inform consumers that when the Products are heated in a microwave or frozen as intended, directed and instructed for ordinary use, they release microplastics that are then leached into consumers' food contained therein ("Material Omission"). The Material Omission is meaningful to consumers as studies show that the ingestion of microplastics poses serious health risks, including potential harm to the digestive tract, immune system and reproductive system. The Material Omission leads reasonable consumers to believe that the Products do not pose a risk of microplastic exposure and contamination of their food, which in turn creates a false sense of security. Defendant fails to provide any warning to consumers regarding the release of microplastics when the Products are used as intended, directed and instructed, despite its knowledge of this fact. Defendant has thus breached its legal obligations to consumers by failing to disclose clearly and conspicuously on the Products' front packaging and

labeling that the Products leach microplastics into consumers' food through the ordinary use of the Products—namely microwaving and freezing (the "Material Risk").

4.    **Consumer Expectation of Products in the Marketplace**. Consumers have a reasonable expectation that products sold in the marketplace are fit for their intended and marketed use. They trust that if a product is available for purchase, it does not pose risks that are known to the manufacturer, but undisclosed to the consuming public. Consumers further rely on manufacturers to provide clear warnings if a product fails to meet this basic expectation. They expect manufacturers to exercise diligence in ensuring that their products do not present a risk of microplastics leaching into consumers' food or, at a minimum, to provide clear warnings when products present such a risk. This expectation is especially heightened when the products are intended for use in common household practices such as food storage and preparation like microwave and freezer use. Defendant exploits these consumer expectations by failing to disclose the Material Risk—that its Products release microplastics that are then leached into consumers' food when microwaved and frozen—thereby misleading consumers into believing that the Products are free from such risk.

5.    **Food Storage Products are Inherently Represented as, and Expected to be, Fit for Marketed Use**. Consumers rightfully expect that products designed for food storage and marketed as "Microwave Safe" and suitable for "Freezer" use, are free from the risk of leaching microplastics into their food through ordinary use as intended, directed and instructed. This expectation is reasonable, as consumers rely on such products to safely store, microwave and freeze the food they and their families consume. Ensuring that food storage products protect the integrity of the food contained inside is a top concern when making purchasing decisions, and consumers reasonably expect manufacturers to warn them if a product presents the risk of microplastic exposure through normal use as intended, directed and instructed. Consumers place further trust in the Products because Defendant's Ziploc brand is widely recognized and reasonably conveys to consumers that the Products are industry-leading and thus do not pose the Material Risk. The Products, however, fail to meet this standard by leaching microplastics into food when microwaved and frozen as intended, directed and instructed for ordinary use. As a result, the Products fail to

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1  meet consumers' reasonable expectation that they are fit for their marketed use and free from the

2  Material Risk.

3      6.     **The "Microwave Safe" and "Freezer" Misrepresentations Further Consumer**

4  **Deception and Lull Consumers into a False Sense of Security**. In addition to the reasonable

5  expectation that food storage products are fit for their marketed use and do not present the Material

6  Risk in common kitchen practices, consumers are further deceived and misled by Defendant's

7  "Microwave Safe" and "Freezer" misrepresentations prominently displayed on the Products' labels.

8      7.     The "Microwave Safe" misrepresentation conveys to consumers that the Products can

9  be heated in a microwave without posing the Material Risk. However, despite this claim, the

10  Products leach microplastics into food when microwaved as intended, directed and instructed. In

11  fact, microwave heating causes the highest microplastic release from plastic food containers made

12  of polyethylene and polypropylene in daily usage scenarios. Some products release as many as 4.22

13  million microplastic and 2.11 billion nanoplastic particles from *only one square centimeter* of plastic

14  area within three minutes of microwave heating. These microplastics can negatively impact the

15  digestive system, immune system and reproductive system, and pose other serious health risks.

16      8.     The "Microwave Safe" misrepresentation creates a false sense of security regarding

17  the Products' quality and misleads consumers to believe the Products are free from the Material

18  Risk. Reasonable consumers interpret the "Microwave Safe" misrepresentation to mean that the

19  Products are designed for microwave use and will not release microplastics that are then leached

20  into consumers' food. By making the affirmative misrepresentation that the Products are

21  "Microwave Safe," while simultaneously failing to disclose the Material Risk, Defendant deceives

22  consumers into falsely believing that the Products pose no risk of undisclosed microplastic

23  exposure.

24      9.     Similarly, the "Freezer" misrepresentation gives consumers the misleading

25  impression that the Products can store food at low temperatures without posing the Material Risk.

26  However, freezing temperatures can alter the physical properties of plastic, making it brittle and

27  more prone to fragmentation. This weakened structure increases Products' susceptibility to further

28  degradation, especially when subjected to reheating in a microwave. Studies show that even under

refrigeration or room temperature—without any external stress like microwaving—polyethylene and polypropylene products, like the Products at issue here, release thousands of microplastics and millions of nanoplastics per square centimeter of surface area. Freezing exacerbates this issue, and when combined with reheating—particularly microwaving, which has been shown to release the highest levels of microplastics—these risks are further amplified.

10.     Given that Defendant markets the Products as reusable, it is foreseeable that the Products may undergo multiple freeze-thaw and reheat cycles. The "Freezer" misrepresentation thus falsely conveys that the Products are fit for such use, leading consumers to believe they do not present the Material Risk. Reasonable consumers interpret this misrepresentation to mean the Products are fit to store food in a freezer for extended periods without the risk of microplastics leaching into the food contained inside. It is also foreseeable that consumers may use the same "Freezer" Products to reheat food in a microwave, especially since the packaging also includes the "Microwave Safe" misrepresentation. By affirmatively marketing the Products for freezer use—while failing to disclose the associated Material Risk—Defendant misleads consumers into believing the Products are free from such hazards, thereby putting consumers and their families at risk of microplastic exposure and consumption.

11.     **The Deception of the "Microwave Safe" and "Freezer" Misrepresentations and Material Omission in the Unlawful Advertising and Sale of the Products**. Defendant's deceptive conduct misleads reasonable consumers, including Plaintiff, through both affirmative misrepresentations and Material Omission. Defendant affirmatively represents that the Products are "Microwave Safe," and/or fit for the "Freezer," leading consumers to believe they are fit to be microwaved and frozen without risk of microplastics leaching into their food. At the same time, Defendant omits material information that the Products release microplastics when microwaved and frozen as intended, directed and instructed. This dual deception misleads consumers into believing the Products are free of the Material Risk. Through false, misleading and deceptive labeling, advertising and marketing practices, Defendant exploits consumers' reasonable expectations that the Products, marketed as "Microwave Safe" and suitable for "Freezer" use, are fit to be microwaved and frozen without risk of microplastics leaching into their food. This deception causes consumers

to pay a premium for perceived quality and promised benefits that are not delivered. Defendant's affirmative misrepresentations and Material Omission are therefore misleading and unlawful.

12.     **The Products**. The Products at issue are Ziploc bags and containers sold to consumers in the United States and the state of California, that contain the "Microwave Safe," "Freezer" and Material Omission on their labels and/or packaging, in all sizes, variations, packs, sets and bundles. The Products include, but are not necessarily limited to, the following:

a.     Ziploc Freezer Bags Pint/Small,

b.     Freezer Bags Quart/Medium,

c.     Freezer Bags Gallon/Large,

d.     Ziploc Slider Freezer Bags Quart/Medium,

e.     Ziploc Slider Freezer Gallon/Large Bags,

f.     Ziploc Slider Storage Bags Quart/Medium,

g.     Ziploc Slider Storage Bags Gallon/Large, and

h.     Ziploc Container.

13.     Below are fair and accurate depictions of front labels representative of each Product category, taken from Defendant's official website or the website of authorized retailers, evidencing the Material Omission, "Microwave Safe" and "Freezer" misrepresentations:

**Ziploc Freezer Bags**



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265





**Ziploc Slider Freezer Bags**



CLASS ACTION COMPLAINT



**Ziploc Slider Storage Bags**





CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**Ziploc Container**



14.     **Primary Dual Objectives**. Plaintiff brings this action individually and on behalf of similarly situated consumers who purchased the Products during the relevant class period, with two primary objectives. First, Plaintiff seeks, on her individual behalf and on behalf of the Class/Subclass, a monetary recovery for the price premium paid for the Products because of Defendant's "Microwave Safe" misrepresentation, "Freezer" misrepresentation and Material Omission. This recovery may include damages, restitution, disgorgement and any applicable penalties or punitive damages, as permitted by law. Second, Plaintiff seeks, on her individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendant's unlawful manufacture, advertising and sale of the Products with the "Microwave Safe" misrepresentation, "Freezer"

8

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

misrepresentation and Material Omission. Such relief is necessary to prevent consumers from continuing to be misled into believing the Products are fit for such use and do not present the Material Risk. The requested injunctive relief may include one or more of the following: disclosure of the Material Omission on the Products' labels and/or packaging; disclosure of the Material Omission in the Products' advertising; modification of the Products so that they no longer pose a risk of the Material Risk; removal or modification to the "Microwave Safe" and the "Freezer" misrepresentations; and/or discontinuance of the Products' manufacture, marketing and/or sale.

## II.    JURISDICTION

15.    This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2)(A), because the proposed Classes consist of 100 or more members; the amount in controversy exceeds $5,000,000.00, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16.    This Court has personal jurisdiction over Defendant because Defendant operates, conducts and engages in substantial business in this judicial district, including, but not limited to, the promotion, sale, advertising and distribution of its Products, tortious acts committed in this state through its misrepresentations and omissions related to the sale, advertising and distribution of the Products, injury caused to persons within this state and a substantial portion of the actions giving rise to the claims took place in this state.

## III.    VENUE

17.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff Linda Cheslow, as detailed below, purchased the unlawful Products in this District, and Defendant has marketed, advertised and sold the Products within this District.

## IV.    DIVISIONAL ASSIGNMENT

18.    Pursuant to Local Rule 3-2(c) and (e), this action may be assigned to the San Francisco Division, as a substantial part of the events or omissions giving rise to the claim occurred in this Division.

V.    **PARTIES**

    A.    **Plaintiff**

    19.    **Plaintiff Linda Cheslow**. The following is alleged based upon Plaintiff Linda Cheslow's personal knowledge:

    a.    **Residence**. Plaintiff is a resident of Santa Rosa, Sonoma County, in the state of California.

    b.    **Purchase Details**. In or around 2024, Plaintiff purchased Ziploc Seal Top Freezer Bag, Gallon, 38-count and Ziploc Seal Top Freezer Bag, Quart, 54-count in Sonoma County from a Costco store for approximately $15.00 to $20.00 for each (the "Purchased Products").

    c.    **Reliance on Material Omission and Misrepresentations**. When making her purchase, Plaintiff relied upon the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission on the Products' labels or packaging. The affirmative misrepresentations and the Material Omission led her to believe that the Products were safe and suitable for microwave use and food storage in a freezer without posing the Material Risk.

    d.    **No Actual Knowledge of Falsity**. At the time of her purchase, Plaintiff was unaware that the Products posed the Material Risk—*i.e.*, that the Products could leach microplastics when used as intended, directed and instructed.

    e.    **No Notice of Contradictions**. Plaintiff did not observe any disclaimer, qualifier or other explanatory statement or information on the Products' labels or packaging that disclosed or suggested that the Products leach microplastics when microwaved or frozen as intended, directed and instructed.

    f.    **Causation/Damages**. But for the Material Omission and misrepresentations—*i.e.*, that the Products carry a substantial risk of releasing microplastics when microwaved or frozen during ordinary use—Plaintiff would not have purchased the Products or would not have paid as much for them.

    g.    **Desire to Repurchase**. Plaintiff regularly visits stores where Defendant's Products are sold, continues to see the Products available for purchase and intends to purchase the Products again in the future if she can be sure that the Products are fit for their central purpose (*i.e.*, if the Products did not pose the Material Risk). But absent injunctive relief, Plaintiff cannot now or in the future rely on the Products' labels because she cannot know whether they remain deceptive, and she may reasonably, but incorrectly, assume the Products were improved or otherwise changed to be as marketed and compatible with their central food storage purpose. Plaintiff is an average consumer who is not sophisticated in her knowledge of plastic composition or in the manufacturing, composition and formulation of food storage products, like the Products. An injunction requiring disclosure of the Material Risk and removal of the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation unless the Material Risk was eliminated or otherwise prohibiting use of a materially false and misleading labels would enable Plaintiff to rely confidently on the labels in making her future purchase decisions. Absent injunctive relief, Plaintiff and other reasonable consumers would have no way of assessing the fitness of the Products based solely on their packaging, which does not disclose the Material Risk.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

20.    **Plaintiff's Future Harm**. Defendant continues to market and sell the Products with both the affirmative misrepresentations and Material Omission, creating an ongoing harm to consumers. As average consumers without specialized knowledge of microplastic composition, including the properties of polyethylene and polypropylene used in the Products, Plaintiff is particularly vulnerable to this deceptive practice. Despite Plaintiff's desire to purchase the Products again, there is a substantial risk of future injury due to Plaintiff's reasonable, but incorrect, belief that the Products are fit for their intended purpose and do not present a risk of microplastic leaching into her and her family's food when microwaved and/or frozen. Given Defendant's continued marketing of the Products as "Microwave Safe" and suitable for the "Freezer," without disclosing the risk of microplastic contamination, Plaintiff is likely to believe that the Products have been reformulated to address the Material Risk. This mistaken belief, reinforced by Defendant's ongoing misrepresentations and Material Omission, would lead Plaintiff to purchase the Products again, exposing her to the same harm she initially experienced. Plaintiff's lack of expertise in plastic composition prevents her from independently verifying whether the Products have been modified to eliminate the risk of microplastic leaching. As a result, Plaintiff and other reasonable consumers continue to be deprived of the ability to make fully informed purchasing decisions regarding the Products, despite their desire to purchase them again. Without injunctive relief, consumers have no way of assessing the Products' Material Risk when microwaved and/or frozen based on the packaging. The Products do not clearly disclose their material composition, and even if they did, consumers would still be unable to determine whether those materials release microplastics when used as intended, directed and instructed.

**B.    Defendant**

21.    **Defendant SC Johnson & Son, Inc**. is a corporation organized under the laws of Wisconsin with its principal place of business in Racine, Wisconsin. Defendant was and is doing business in the state of California at all relevant times. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the state of California. Defendant is the owner, manufacturer and/or distributor of the Ziploc Products at issue. Defendant and its agents promoted, advertised, marketed and sold the Products throughout

the United States, including the state of California. The unfair, unlawful, deceptive and misleading "Microwave Safe" misrepresentation, "Freezer" misrepresentation and the Material Omission on the Products' labeling and packaging were prepared, authorized, ratified and/or approved by Defendant and its agents to deceive and mislead consumers in the state of California into purchasing the Products. Additionally, Defendant knew of the falsity of the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission, but failed to disclose them at the time Plaintiff and all Class Members purchased the Products, notwithstanding its duty to do so. Further, Defendant had the right and authority, at all relevant times, to disclose the Material Omission and clarify the "Microwave Safe" and "Freezer" misrepresentations, including the time leading up to and through the incident giving rise to the claims asserted herein, including Plaintiff's purchases described above, in addition to all Class Members' purchases.

## VI.    FACTUAL ALLEGATIONS

### A.    The Avoidance of Microplastic Consumption is Material to Consumers

22.    Microplastics are small plastic particles less than 5 millimeters in diameter that form when solid plastics break down through abrasion, degradation or chemical processes such as exposure to heat.[1] These tiny particles pose a risk of significant adverse effects on human health.[2] Studies show that microplastics alter the composition of gut microbiota, which play a crucial role in digestion, nutrient absorption and immune system development.[3] Furthermore, microplastics "produc[e] a toxic effect on the digestive tract," that causes irreversible changes in the reproductive

---

[1] *See* Sumon Sarkar, Hanin Diab & Jonthan Thompson, *Microplastic Pollution: Chemical Characterization and Impact on Wildlife*, 20(3) Int. J. Environ. Res. Public Health 1745 (2023).

[2] *See* Raffaele Marfella et al., *Microplastics and Nanoplastics in Atheromas and Cardiovascular Events*, 390 NEW ENGLAND J. MED. 900–910 (Mar. 6, 2024), https://www.nejm.org/doi/full/10.1056/NEJMoa2309822 (concluding that "patients with carotid artery plaque in which [microplastics and nanoplastics (MNPs)] were detected had a higher risk of a composite of myocardial infarction, stroke, or death from any cause at 34 months of follow-up than those in whom MNPs were not detected").

[3] See Alba Tamargo et al., PET Microplastics Affect Human Gut Microbiota Communities During Simulated Gastrointestinal Digestion, First Evidence of Plausible Polymer Biodegradation During Human Digestion, 12 SCI. REPS. 528 (Jan. 11, 2022), https://doi.org/10.1038/s41598-021-04489-w ("The work presented here indicates that microplastics are indeed capable of digestive-level health effects.").

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

axis and central nervous system of offspring after prenatal and neonatal exposure, affect the immune system due to their physicochemical properties and can cause chronic pulmonary disease.[4]

23.    Even *in vitro* experiments using human cells and *in vivo* studies conducted on mice indicate that microplastics can trigger a range of adverse health effects. These include inflammation, oxidative stress resulting from increased production of reactive oxygen species, disturbances in lipid metabolism, imbalances in the gut microbiota and neurotoxicity.[5] Furthermore, microplastic exposure in laboratory animals is linked to immunological responses, endocrine disruption and alterations in energy metabolism.[6]

24.    Microplastics have been found in blood, saliva, liver, kidneys and even the placenta, which highlights their ability to translocate within the body.[7] Notably, nanoplastics, the smallest fraction of these pollutants, are able to enter cells and even penetrate the cell nucleus, which raises concerns about potential intracellular damage.[8] Research suggests associations between microplastic exposure and the risk of serious health issues such as cancer, reproductive problems, lung and liver effects and disruptions in hormone metabolism.[9]

25.    Given that the Products are intended and advertised to be used by families on a daily basis, they pose serious safety risks, not only to the adult members, but also children. Therefore, there is little wonder that scientists studying microplastics emphasize that "enacting solid legislative laws and policies to manage the excessive use of plastic products is crucial; otherwise, the health of ecosystems and living organisms will inevitably deteriorate in the coming years. […] We feel that

---

[4] Nur Hanisah Amran et al., *Exposure to Microplastics During Early Developmental Stage: Review of Current Evidence*, 10 Toxics 597 (Oct. 10, 2022), https://doi.org/10.3390/toxics10100597.

[5] In vitro experiments with human gut microbiota reveal changes in bacterial composition, gut microbiota dysbiosis, and neurotoxicity, PubMed Central (May 3, 2023), https://pmc.ncbi.nlm.nih.gov/articles/PMC10151227/.

[6] Junyi Wu et al., *Effects of Endocrine-Disrupting Chemicals on Gut Microbiota and Their Impact on Gut-Related Diseases*, Frontiers in Endocrinology (Aug. 12, 2021), https://www.frontiersin.org/articles/10.3389/fendo.2021.724989/full.

[7] Andrew Thurston, *Microplastics Everywhere*, Harvard Med. Sch. Mag., https://magazine.hms.harvard.edu/articles/microplastics-everywhere (last visited Mar. 21, 2025).

[8] *How Microplastics Get into the Food Chain*, World Econ. F., https://www.weforum.org/stories/2025/02/how-microplastics-get-into-the-food-chain/ (last visited Mar. 21, 2025).

[9] Jiaqi Shi et al., The Impact of Microplastic Exposure on Gastrointestinal Tract Cancers: A Comprehensive Review, 16 Cancers 3703 (2024), https://www.mdpi.com/2072-6694/16/21/3703.

13

the government and industries must exert the most significant effort to protect children from MPs [microplastics] exposure. These procedures include avoiding plastic contact of children's meals[.]"[10]

26.     Yet another study emphasized the risk of microplastic ingestion on cardiovascular systems, finding that subjects with "carotid artery plaque in which microplastics were detected had a higher risk of a composite myocardial infarction, stroke, or death from any cause."[11]

27.     Despite the clear scientific and medical opinions, Defendant actively conceals the known risks associated with microplastic consumption, depriving consumers of the ability to make informed choices about their health and well-being. The Products' Material Omission, combined with Defendant's affirmative "Microwave Safe" and "Freezer" representations, create a false sense of certainty, leading consumers to believe that the Products are fit for microwaving and freezing food and pose no risk of microplastics leaching into their food. In reality, consumers are unknowingly consuming and exposing themselves and their families to leached microplastics, which are linked to the risk of "irreversible changes in the reproductive axis and central nervous system," among other severe health risks.[12]

28.     **The Products are Intended for Daily and Constant Use**. The Products at issue—Ziploc storage containers and freezer bags—are not occasional-use items. They are essential household products consumers rely upon to store, microwave, freeze and prepare food. Many consumers use these Products daily, often multiple times, to microwave meals, store leftovers in freezers or prepare food for their families. This frequent and repeated use significantly amplifies the risk microplastics leach from the Products into consumers' food when microwaved or frozen, compounding consumers' exposure to the risk of unnecessary and undisclosed microplastics.

29.     **Microplastics' Bioaccumulation Contributes to Materiality**. Due to their small size, microplastics bioaccumulate.[13] Bioaccumulation results in the compounding risk of negative

---

[10] Amran *supra* note 6.
[11] Marfella, *supra* note 4.
[12] Amran *supra* note 6.
[13] Yue Li et al., *Microplastics in the human body: A comprehensive review of exposure, distribution, migration mechanics, and toxicity*, 946 Science of the Total Environment (June 22, 2024), at 5, https://doi.org/10.1016/j.scitoenv.2024.174215.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

health effects, such as growth and reproduction issues, DNA damage due to oxidative stress, inflammation, physical stress, weakened immunity, histological damage or even death. [14] Microplastics transmit into the human body best through digestion or oral intake. [15] From there, microplastics can leach toxic additives in the acidic environment of the stomach and cause liver inflammation. [16] For people with inflammatory bowel disease (IBS), the microplastics accumulation in feces is directly related to disease severity. [17] Those suffering from liver damage also show an 8-fold increase in plastic contamination compared to liver samples from healthy individuals. [18] This illustrates how microplastics are directly tied to the risk of bodily harm and how the greater the amount of microplastics in one's body, the greater the risk of harm. Thus, each instance of exposure to microplastics compounds the risk of long-term harm. For example, the quantity of microplastics in brain samples collected in 2024 was about 50% higher than in brain samples collected in 2016—demonstrating the alarming reality of bioaccumulation. [19]

30.    A September 2024 study found polypropylene microplastics in every sample of bone marrow tested, demonstrating that microplastics, like those shed by Defendant's Products, embed themselves deeply into the human body. [20] Another alarming study published in September 2024, conclusively demonstrated the presence of microplastics in the human brain, with the authors cautioning that their "results should raise concern in the context of increasing prevalence of neurodegenerative diseases." [21] Ingestion of microplastics was linked to colon cancer, which is on

---

[14] *Id.*

[15] *Id.*

[16] Dunzhu Li et al., Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation, 1 NATURE FOOD 746, 746 (Nov. 2020), https://doi.org/10.1038/s43016-020-00171-y.

[17] Zehua Yan et al., Analysis of Microplastics in Human Feces Reveals a Correlation between Fecal Microplastics and Inflammatory Bowel Disease Status, 56 Environmental Science & Technology 414 (Dec. 22, 2021), https://doi.org/10.1021/acs.est.1c03924

[18] Thomas Horvatits et al., *Microplastics detected in cirrhotic liver tissue*, The Lancet (July 11, 2022), https://www.thelancet.com/pdfs/journals/ebiom/PIIS2352-3964(22)00328-0.pdf.

[19] Douglas Main, *Microplastics are infiltrating brain tissue, studies show: 'There's nowhere left untouched,'* The Guardian (Aug. 21, 2024), https://www.theguardian.com/environment/article/2024/aug/21/microplastics-brain-pollution-health.

[20] Xiaoli Guo, *Discovery and analysis of microplastics in human bone marrow*, 477 J. Hazardous Materials (Sept. 15, 2024), https://doi.org/10.1016/j.jhazmat.2024.135266.

[21] Luís Fernando Amato-Lourenço et al., *Microplastics in the Olfactory Bulb of the Human Brain*, JAMA Network (Sep. 16, 2024), https://jamanetwork.com/journals/jamanetworkopen/fullarticle/2823787.

15

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

the rise in young people, and other cancers related to the gastrointestinal tract.[22] A recent study published in Nature Medicine on February 3, 2025 revealed a concerning result that brains accumulate *7–30 times greater* than the concentrations seen in livers or kidneys, and brain samples from dementia cases exhibited *even greater* microplastic presence.[23] What is even more worrying is that liver and brain samples from 2024 had significantly higher concentrations of microplastics than 2016 samples.[24]

31.     Defendant's Products are intended for regular use, serving as essential tools for storing, microwaving, freezing and preparing food that consumers rely on daily. However, with each use, consumers unknowingly ingest microplastics that accumulate in their bodies over time due to continuous exposure. This buildup increases the risk of serious health issues, including problems with digestion, immune function, reproductive health and more.[25] This ongoing risk makes Defendant's misconduct even more egregious and underscores the urgent need for accountability.

**B.     The Products Are Made of Polyethylene and Polypropylene Plastic and Consumers Are Intended, Directed and Instructed to Microwave and Freeze the Products**

32.     **Defendant Intends, Directs and Instructs Consumers to Microwave the Products**. Plaintiff and other reasonable consumers understand that the regular and ordinary use of the Products involves exposure to heat, particularly when heating food in a microwave. Defendant knows this, which is why it instructs consumers to vent Ziploc bags by "1 inch on one side before heating" and warns that "the bag itself and its contents may be hot" while cautioning not to "overheat the contents as the bag may melt."[26] Despite these instructions, Defendant omits the material fact that the Products—made of polyethylene and polypropylene—release microplastics in significant

---

[22] Bridget Balch, *Microplastics are inside us all. What does that mean for our health?*, AAMC (June 27, 2024), https://www.aamc.org/news/microplastics-are-inside-us-all-what-does-mean-our-health
[23] Alexander J. Nihart et al., *Bioaccumulation of Microplastics in Decedent Human Brains*, Nature Medicine (Feb. 3, 2025), https://www.nature.com/articles/s41591-024-03453-1 (emphasis added).
[24] *Id.*
[25] Li, *supra* note 17.
[26]     Ziploc    BrandSlider    Freezer    Bags    Quart/Medium,    https://ziploc.com/en-us/products/bags/slider/medium-freezer (last visited Mar. 20, 2025).

quantities when microwaved. Research shows that polypropylene products can release microplastics with values as high as 16.2 million particles per liter, and that exposure to high-temperatures, such as those encountered during microwaving, significantly increases microplastic release.[27] By advertising and selling the Products as "Microwave Safe," without disclosing the Material Risk associated therewith, Defendant jeopardizes the well-being of countless consumers and misleads individuals who trust that these Products are fit for everyday food preparation and storage.

33.    **Consumers Microwave the Products as Intended, Directed and Instructed**. Consumers frequently use the Products to heat or reheat food in the microwave or to store hot food, and they trust that these Products marketed as "Microwave Safe" are fit for such purposes. Defendant's own instructions advise consumers to vent the Ziploc bags before microwaving and caution against overheating, instructions that clearly indicate the Products are designed and intended to be exposed to heat. However, heating polyethylene and polypropylene containers and bags such as Defendant's Products at higher temperatures is shown to cause a significant increase in the release of microplastics. Research demonstrates that microwaving polypropylene products can result in more than a two-fold increase in microplastic release, exposing consumers to the leaching of undisclosed microplastics from the Products directly into their food. Despite this known risk, Defendant fails to warn consumers that microwaving its Products as intended drastically increases microplastic exposure, leaving consumers unaware of the leaching of microplastics directly into their food through routine and foreseeable use.

34.    **Defendant Intends, Directs and Instructs Consumers to Freeze and Microwave the Products**. Plaintiff and other reasonable consumers understand that the regular and ordinary use of the Products involves storing food in a fridge or freezer, as well as reheating food. It is evident that Defendant knows this consumer understanding because Defendant advertises on its own official webpage that the Products are designed to make "packing up tonight's dinner *leftovers* super easy, to bringing those *leftovers* to the office (or just about anywhere) super convenient."[28] In addition,

---

[27] Dunzhu Li et al., Microplastic Release from the Degradation of Polypropylene Feeding Bottles During Infant Formula Preparation, 1 NATURE FOOD 746, 746 (Nov. 2020), https://doi.org/10.1038/s43016-020-00171-y.

[28] *Ziploc® Brand Freezer Bags Quart / Medium*, Ziploc, https://ziploc.com/en-us/products/bags/freezer/medium (last visited Mar. 27, 2025) (emphasis added).

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Defendant includes the "Microwave Safe" and "Freezer" misrepresentations together on the labeling and packaging of the Products, making it reasonable and foreseeable that a reasonable consumer may believe that the "Freezer" bag Products could be also used to reheat food. Despite the above-mentioned misrepresentations, Defendant omits the material fact that, following refrigeration and/or freezing, the Products—made of polyethylene and polypropylene—become even more susceptible to degradation and microplastic release during reheating, especially through microwaving. Studies show that low temperatures can alter the physical characteristics of plastics, and plastic becomes fragile when frozen, presenting a comparable possibility of microplastics being released.[29] Research indicates that, even without external stimulation such as heating, refrigeration and room-temperature storage for ten days can cause plastic food containers made of polypropylene to release thousands of microplastics per square centimeter and millions of nanoplastics *from only square centimeter of plastic area*.[30] Given that plastic becomes fragile when frozen, it comes as no surprise that cold storage and reheat cycles can significantly increase the release of microplastics and nanoplastics because external stimulations are applied to the frozen plastic containers.[31] In fact, it was confirmed that polyethylene products release a large amount of microplastics during the cold storage and reheating process.[32] Food containers equipped with inner membranes composed of polyethylene exhibited an especially high degree of precipitation for polyethylene in the total microplastic released.[33] Given that consumers may reasonably reheat frozen stored food in a microwave with "Freezer" bags labeled as "Microwave Safe," by advertising and selling the Products as suitable for "Freezer" use without disclosing the Material Risk associated with freezing or heating them, Defendant misleads individuals who trust that these Products are fit for everyday food preparation and storage.

---

[29] Chen et al., *Plastic Bottles for Chilled Carbonated Beverages as a Source of Microplastics and Nanoplastics*, ScienceDirect (Aug. 15, 2023), https://www.sciencedirect.com/science/article/abs/pii/S0043135423006796?via%3Dihub (citations omitted).

[30] Hussain et al., Assessing the Release of Microplastics and Nanoplastics from Plastic Containers and Reusable Food Pouches: Implications for Human Health, ACS Publications (June 21, 2023), https://pubs.acs.org/doi/10.1021/acs.est.3c01942?ref=PDF.

[31] *See supra* note 29.

[32] Zhao et al., *Microplastics Release from Infant Feeding Bottles and Milk Storage Bags*, ScienceDirect (2025), https://www.sciencedirect.com/science/article/abs/pii/S0956713524006388.

[33] *Id.*

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

35. **Consumers Freeze and Microwave the Products as Intended, Directed and Instructed**. Consumers frequently use the Products to store food in the freezer and reheat that same food. Defendant's own advertising tells consumers to use the Products to pack up dinner leftovers or to bring leftovers to the office, which clearly indicate the Products are designed and intended to be used for food storage in freezers. Further, Defendant labeled the Products with "Freezer" and "Microwave Safe" misrepresentations together, deepening the misleading effect on consumer's perception that the Products can be used in the microwave following storage in the freezer. However, freezing polyethylene and polypropylene containers and bags, such as Defendant's Products, causes the release of microplastics, let alone the exacerbated vulnerability to microwaving due to the weakened structure caused by freezing. Heating alone can significantly increase the amount of microplastic released from polypropylene containers than storage at room temperature.[34] Despite this known Material Risk, Defendant fails to warn consumers that freezing the Products, as well as freezing and thereafter microwaving the Products as intended, directed and instructed, poses the risk of microplastic exposure through the leaching of microplastics from the Products into consumers' food, leaving consumers unaware of the Material Risk they face through routine and foreseeable use.

36. **The Products Pose an Undisclosed Material Risk**. The Products are made of polyethylene and polypropylene plastic, which pose the danger of leaching microplastics when microwaved and frozen, the ingestion of which presents serious health risks such as compromising the immune system, damaging the digestive tract and increasing the risk of various cancers. This risk is exacerbated by the Products' intended and foreseeable use, as Defendant markets the Products as "Microwave Safe" and suitable for "Freezer" use and instructs consumers to microwave food in them and store leftovers in freezers without any warning about the Material Risk of microplastic exposure, leaching and contamination. The Material Risk is further compounded by the frequent, routine use of the Products in household settings. Many consumers use the Products daily for storing, microwaving, freezing or preparing food, thus making exposure to, and consumption of,

---

[34] Hussain et al., *supra* note 33; Xin Guo et al., *Migration Testing of Microplastics from Selected Water and Food Containers by Raman Microscopy*, Science Direct (Jan. 15, 2024), https://www.sciencedirect.com/science/article/abs/pii/S0304389423020824.

microplastics a recurring and persistent threat. This is particularly concerning given that microplastics bioaccumulate in the body, meaning that each exposure and consumption compounds the risk of long-term health harm. As a result, the Products pose an undisclosed and unnecessary Material Risk due to their tendency to leach microplastics into consumers' food under normal and intended uses.

37.    **The Material Risk Negates the Products' Central Function**. The central function of Defendant's Products is to provide a means for storing, reheating and preparing food that does not implicate the Material Risk. However, the Products are defective in fulfilling this function because they release harmful microplastics into consumers' food contained therein, a defect that directly compromises the Products' ability to perform their intended purpose. Consumers reasonably expect that food storage products marketed as "Microwave Safe" and suitable for "Freezer" use are fit for microwaving and freezing food without the Material Risk of microplastics leaching into their food. The absence or disclosure of the Material Risk is material and central to their intended use. Consumers do not purchase food storage products expecting to be exposed to risks such as microplastic leaching and contamination. By releasing microplastics when microwaved and frozen as intended, the Products fail to fulfill their essential function of providing a reliable method for food storage and preparation that does not implicate the Material Risk. As a result, the Material Risk renders the Products defective and unsuitable for their intended and advertised purpose.

C.    **The Affirmative Misrepresentations and Material Omission Mislead Reasonable Consumers About the Products' Integrity and Conceal the Material Risk**

38.    Defendant materially omits that its Products pose the Material Risk of leaching microplastics into consumers' food, which presents a risk of detrimental long-term harm to consumers. Consumers reasonably expect manufacturers to disclose risks associated with their products, particularly when those products are intended for everyday food storage and preparation. This expectation is even greater for products marketed as "Microwave Safe" and suitable for "Freezer" use, where consumers rely on the manufacturer's assurance that the Products can be microwaved and frozen without posing a risk of microplastic release, leaching, exposure and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

consumption. By omitting the critical fact that its Products release microplastics when microwaved and frozen, Defendant misleads consumers into believing the Products are structurally sound and do not pose the Material Risk. This Material Omission is especially harmful given that consumers commonly use the Products to reheat food in the microwave and store food in the freezer as part of their ordinary use, unwittingly contaminating their food with microplastics. Defendant's failure to disclose this known Material Risk deprives consumers of the ability to make informed decisions about their purchasing decisions. A recent study tested consumers' willingness to pay for products that disclosed the risk of microplastic contamination versus those that did not. [35] The results revealed that consumers place substantial value on product labels that warn about the potential harm from microplastics.[36] This evidence highlights the materiality of Defendant's Material Omission and the importance of disclosing the Material Risk of microplastic contamination to consumers.[37]

39.    By failing to disclose the Material Risk and by affirmatively misrepresenting that the Products are "Microwave Safe," and suitable for "Freezer" use, Defendant has misled consumers about the Material Risk of its Products. This deception has allowed Defendant to boost its profits at the expense of consumers' trust.

**D.    Plaintiff and Reasonable Consumers Were Misled by the Material Omission and "Microwave Safe" and "Freezer" Misrepresentations When Purchasing the Products**

40.    **Products**. Defendant manufactures, markets, promotes, advertises, labels, packages and sells the Products, each of which omits the Material Risk from the Products' front-facing labels and packaging while representing them to be "Microwave Safe" and suitable for "Freezer" use.

41.    **The Material Omission, the "Microwave Safe" Representation and the "Freezer" Misrepresentations**. On the Products' labeling and packaging, Defendant affirmatively misrepresents that the Products are "Microwave Safe" and suitable for "Freezer" use to reinforce the impression that they can be microwaved and frozen without posing the Material Risk of

---

[35] László Bendegúz Nagy et al., *Nudging consumers about the issue of microplastics: an experimental auction study on valuation for sustainable food packaging*, 14 Scientific Reports (Aug. 16, 2024), https://www.nature.com/articles/s41598-024-69962-8.
[36] *Id.*
[37] *Id.*

CLASS ACTION COMPLAINT

microplastic leaching into consumers' food. Yet, Defendant failed to disclose the Material Risk of microplastic contamination, creating a false impression that the Products are fit for their intended use.

42.    **Reasonable Consumers' Perception**. The combination of Defendant's affirmative "Microwave Safe" and "Freezer" misrepresentations and its Material Omission lead reasonable consumers, like Plaintiff, to believe that the Products are absent of the Material Risk. Consumers are led to believe that the Products are fit for food storage and preparation and that they do not pose the Material Risk.

43.    **Materiality**. The Material Omission, along with Defendant's affirmative "Microwave Safe" and "Freezer" misrepresentations, are material to reasonable consumers, including Plaintiff, in deciding to purchase the Products because consumers prioritize product integrity when it concerns food preparation and storage. By labeling the Products as "Microwave Safe" and suitable for "Freezer" use, Defendant affirmatively misleads consumers into believing that the Products can be microwaved and frozen without posing the Material Risk of microplastics leaching into consumers' food. This is especially significant given that microwaving and freezing the Products in accordance with Defendant's own instructions, result in microplastic contamination. For many consumers, ensuring the integrity of household products involved in food preparation and storage is a crucial factor that strongly influences purchasing decisions. Defendant's false "Microwave Safe" and "Freezer" misrepresentation**s**, combined with its failure to disclose the Material Risk of microplastic contamination, deprived consumers of critical information they rely on to make informed purchasing decisions.

44.    **Reliance**. The Class, including Plaintiff, reasonably relied on the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation in deciding to purchase the Products.

45.    **Falsity**. The Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation are deceptive because the Products leach microplastics through ordinary use—primarily through microwave and freezer use.

46.    **Consumers Lack Knowledge of Falsity**. When purchasing the Products, members

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

of the Class, including Plaintiff, are unaware and have no reason to believe that the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation are misleading, deceptive and unlawful. The Products' labeling and packaging leads consumers to believe that the Products are fir for microwave and freezer use and free from the Material Risk of microplastics leaching from the Products into their food. The Products do not contain a clear, unambiguous and conspicuously displayed statement informing reasonable consumers that the Products pose the Material Risk.

47.    **Defendant's Knowledge**. Defendant knew, or should have known, that the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation were misleading, deceptive and unlawful at the time Defendant manufactured, marketed, advertised, labeled and sold the Products.

a.    **Knowledge of Reasonable Consumers' Perception**. Defendant knew, or should have known, that the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation would lead reasonable consumers to believe that the Products would not expose them, or their families, to microplastics. Not only has Defendant utilized a long-standing brand strategy to promote its Products as reliable for common household use absent the Material Risk, but Defendant also has an obligation under Section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, *et seq*., to evaluate its marketing claims from the perspective of the reasonable consumer. This statutory obligation required Defendant to consider whether the Material Omission, whether in isolation or in conjunction with its marketing strategy, would mislead reasonable consumers to believe that the Products are free from the Material Risk of microplastic exposure. Thus, Defendant either knew that the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission were misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that the misrepresentations and Material Omission were deceptive had it complied with its statutory obligation to evaluate marketing claims from the reasonable consumer's perspective.

b.    **Knowledge of Falsity**. Defendant manufactured and marketed the Products with the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation despite knowing that the Products did not conform to these misrepresentations and omission. Specifically, Defendant advertised, labeled and packaged the Products as "Microwave Safe" and fit for "Freezer" use, while intentionally failing to inform consumers that the Products release microplastics when microwaved or frozen. This conduct indicates that Defendant either knew the Products could not perform as advertised, or would have known had it fulfilled its statutory duty to evaluate marketing claims from the reasonable consumer's perspective. Defendant's conscious decision to withhold this critical information reflects an intentional effort to mislead consumers into believing the Products were of different quality and nature than they actually are.

c.    **Exclusive Knowledge**. Defendant is in a superior position to Plaintiff and the

23

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Class to know about the Products' Material Risk. As the manufacturer of the Products, Defendant has exclusive knowledge of the risks associated with microplastic contamination. Defendant's control over the manufacturing, design, distribution and testing of the Products gives it unique insight into the presence of the Material Risk. Rather than disclosing this information, Defendant purposely retained its exclusive knowledge by failing to inform consumers that the Products are made from polyethylene and polypropylene, materials known to release microplastics when microwaved and/or frozen. Defendant further concealed this Material Risk by prominently labeling the Products as "Microwave Safe" and suitable for "Freezer" use to reinforce the false impression that they could be microwaved and frozen without presenting the Material Risk of microplastic contamination.

d. **Knowledge of Materiality**. Defendant knew, or should have known, that the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation were material to consumers. Manufacturers and marketers, like Defendant, are well aware that product integrity is a paramount concern for consumers, particularly for products designed to hold, heat or freeze food. Here, the Material Omission directly relates to the Products' fitness for marketed use. Defendant's awareness of this materiality is evident by its decision to prominently label the Products as "Microwave Safe" and suitable for "Freezer" use, which Defendant knew would signal to consumers that the Products were fit for microwaving and freezing food. Furthermore, it is common sense that information about the Material Risk of microplastic contamination would directly influence consumer purchasing decisions. Defendant knew that disclosing the Material Risk of microplastic leaching would likely deter consumers from purchasing the Products.

e. **Defendant's Continued Deception, Despite Its Knowledge**. As the manufacturer and marketer of the Products, Defendant had exclusive control over the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission on the Products' labels, packaging and advertisements. Defendant could have easily disclosed the Material Risk of microplastic contamination or corrected consumers' mistaken belief that the Products were fit for microwaving or freezing food. Despite its knowledge and its awareness that consumers reasonably rely on the misrepresentations and Material Omission when making purchasing decisions, Defendant deliberately chose to market the Products with the misleading "Microwave Safe" misrepresentation and the "Freezer" misrepresentation while omitting the associated Material Risk. This intentional deception misleads consumers into purchasing or overpaying for the Products under the false belief that they were fit for their intended use. Accordingly, Defendant knew, or should have known, at all relevant times, that its conduct would mislead reasonable consumers, including Plaintiff, into purchasing the Products based on false and deceptive representations.

48.    **Duty to Disclose Material Omission**. Defendant had an obligation, at all relevant times, to disclose the Material Omission—that the Products leach microplastics into food when microwaved or frozen during ordinary use. This critical information, which Defendant deliberately withheld from consumers, is not only material to their purchasing decisions, but also poses significant risks to consumer well-being. Defendant knew, or should have known, that reasonable consumers would interpret the "Microwave Safe" misrepresentation and the "Freezer"

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

misrepresentation, combined with the absence of any disclosure about the Material Risk of microplastic contamination, to mean that the Products were fit for microwaving and freezing and did not present the Material Risk of microplastics leaching into their food. Defendant was also fully aware that consumers place a high value on product integrity, particularly when it comes to food preparation and storage, and that this perceived integrity was a key factor influencing consumers' purchasing decisions. By failing to disclose this crucial information, Defendant misled consumers into relying on the absence of the Material Omission when deciding to purchase the Products.

49.    **Detriment**. Plaintiff and similarly situated consumers would not have purchased the Products, or would not have paid a price premium for them, had they known that the Products posed the Material Risk and, therefore, did not possess the attributes claimed, promised, warranted, advertised and/or represented. Defendant's affirmative "Microwave Safe" misrepresentation and "Freezer" misrepresentation, combined with its Material Omission, misled reasonable consumers into believing the Products were fit for microwaving and freezing food and did not present the Material Risk. As a result, reasonable consumers, including Plaintiff, purchased the Products to their detriment, unknowingly exposing themselves and their families to the Material Risk of microplastic contamination.

**E.**    **The Products are Substantially Similar**

50.    As described herein, Plaintiff purchased the Products. The additional Products identified *supra*, are substantially similar to the Purchased Product.

a. **Defendant**. All Products are manufactured, sold, marketed, advertised, labeled and packaged by Defendant.

b. **Brand**. All Products are sold under the same brand name: Ziploc.

c. **Marketing Demographics**. All Products are marketed directly to consumers for personal use.

d. **Purpose**. All Products are Ziploc storage containers and freezer bags designed and marketed as suitable for heating food in microwaves and storing food in freezers. Defendant's marketing, instructions and labeling reinforce that the Products are intended to be regularly and repeatedly microwaved or frozen, yet Defendant fails to disclose that such ordinary use poses the Material Risk the Products release microplastics into consumers' food.

e. **Use**. All Products are used in the same manner—for heating food in microwaves and storing food in freezers. Defendant's marketing and instructions encourage

consumers to use the Products in ways that expose them to heat and freeze, yet Defendant fails to disclose the resulting Material Risk of microplastic contamination.

f. **Material Omission and Misrepresentations**. All Products contain the Material Omission and are marketed as "Microwave Safe" and suitable for "Freezer" use on their packaging and labeling, reinforcing the false impression that they are fit for microwave and freezer use without the Material Risk of microplastic contamination.

g. **Packaging**. All Products are similarly packaged in a way that emphasizes their suitability for microwave use and/or freezer use, while omitting any warning about the Material Risk of microplastic contamination.

h. **Key Attributes**. Defendant's Products release microplastics into food when microwaved and/or frozen. Defendant encourages consumers to microwave and freeze the Products through its instructions and advertising, reinforcing the expectation that they are fit for such use.

i. **Misleading Effect**. The misleading effect of Defendant's Material Omission, "Freezer" misrepresentation and "Microwave Safe" misrepresentation is consistent across all Products—consumers overpay for the Products under the mistaken belief that they are fit for microwaving and freezing food and pose no Material Risk of microplastic contamination.

**F.    No Adequate Remedy at Law**

51.    **No Adequate Remedy at Law**. Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations**. The statutes of limitation for the causes of action pled herein vary. The limitations period is four years for claims brought under the California Unfair Competition Law ("UCL"), which is one year longer than the statutes of limitation under the California False Advertising Law ("FAL") and the California Consumer Legal Remedies Act ("CLRA"). In addition, the statutes of limitation vary for certain states' laws for unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass Members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class Members who purchased the Products prior to the furthest reach-back under the statute of limitation, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct**. In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the "Microwave Safe" misrepresentation and "Freezer" misrepresentation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar misrepresentations and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

omissions made on the type of Products at issue). Thus, Plaintiff and Class Members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (*e.g.*, the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than other claims. For example, in some states, some common law claims may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class Members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under other common law claims, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.  **Injunctive Relief to Cease Misconduct and Dispel Misperception**. Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products with the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and Material Omission. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosure is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front labels concerning the Products' true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the Court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales and quantities of past/future Product sales.

d.  **Public Injunction**. Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.  **California vs. Nationwide Class Claims**. Violations of the UCL, FAL and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative Class Members.

f.  **Procedural Posture—Incomplete Discovery & Pre-Certification**. In addition, discovery—which has not yet been provided and/or completed—may reveal that

the claims providing legal remedies are inadequate. At this time, forcing an election of remedies at the initial pleadings stage, in the absence of completed discovery regarding class certification and merits, is premature and likely to lead to subsequent, potentially belated, and hotly contested motions to amend the pleadings to add equitable remedies based on a lengthy historical recount of discovery and analysis of voluminous exhibits, transcripts, discovery responses, document productions, etc., as well as related motions to seal confidential information contained therein.

**G.** **Fed. R. Civ. P. 9(b) Allegations** *(Affirmative and By Omission)*

52. Although Defendant is in the best position to know what content it placed on its marketing materials during the relevant timeframe, and the knowledge that it had regarding the Material Risk and its failure to disclose, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by alleging the following facts with particularity:

53. <u>Who</u>: Defendant made the "Microwave Safe" and "Freezer" affirmative misrepresentations regarding the Products despite the Material Risk presented when microwaving and freezing the Products as intended, directed and instructed. It also made the Material Omission regarding the Material Risk. It made these misrepresentations and omission on the Products' packaging, its website and marketing materials, in written and electronic form.

54. <u>What</u>: Defendant's conduct here was, and continues to be, fraudulent because it misrepresented its Products while omitting and concealing that the Products pose the Material Risk when microwaved and/or frozen as intended, directed and instructed. Defendant's conduct deceived Plaintiff and the Class into believing that the Products pose no Material Risk. Defendant knew, or should have known, that this information is material to reasonable consumers, including Plaintiff and the Class, in making their purchasing decisions; yet it omitted and continues to omit any warning that the Products pose the Material Risk when microwaved and/or frozen as intended, directed and instructed. No reasonable consumer would expect that the Products pose the Material Risk.

55. <u>When</u>: Defendant's marketing of the Products and the Material Omission detailed herein were made during the class period, prior to and at the point of sale, leaving Plaintiff and the Class unaware of the Material Risk prior to purchasing the Products.

56. <u>Where</u>: Defendant's marketing of the Products and the Material Omission were made on its packaging and marketing materials, on its website and through its social media, in written and electronic form.

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

57.    <u>How</u>: Defendant made misrepresentations and failed to disclose material facts about the Material Risk through normal use of the Products as intended, directed and instructed, in written and electronic form on the Products' packaging and company website.

58.    <u>Why</u>: Defendant marketed its Products and the Material Omission for the express purpose of inducing Plaintiff and the Class to purchase the Products, the effect of which was that Defendant profited by selling the Products to many thousands of consumers.

59.    <u>Injury</u>: Plaintiff and the Class purchased, or paid more for, the Products when they otherwise would not have absent Defendant's marketing and Material Omission. Consumers continue to suffer economic harm by purchasing the Products that pose the Material Risk.

## VII.    CLASS ACTION ALLEGATIONS

60.    **Class Definition**. Plaintiff brings this action as a class action on behalf of herself and all others similarly situated as Members of the Class defined as follows:

> **Nationwide Class**: All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, for purposes other than resale ("Nationwide Class"); and

> **California Subclass**: All residents of California who, within four years prior to the filing of this action, purchased the Products, for purposes other than resale ("California Subclass").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "Class").

61.    **Class Definition Exclusions**. Excluded from the Class are: (i) Defendant, its assigns, successors and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

62.    **Reservation of Rights to Amend the Class Definition**. Plaintiff reserves the right to amend or otherwise alter the Class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant or otherwise.

63.    **Numerosity**. Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of

purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the state of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

64.    **Common Questions Predominate**. There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a.  Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.  Whether Defendant's conduct of advertising and selling the Products while labeling them as "Microwave Safe," suitable for "Freezer" use, and omitting that they leach microplastics during ordinary use constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.  Whether Defendant used deceptive representations or omission in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.  Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.  Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f.  Whether Defendant's labeling and advertising of the Products are misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.  Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.  Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.  How much more money Plaintiff and the Class paid for the Products than they actually received;

m.  Whether Plaintiff and the Class are entitled to injunctive relief; and

n.  Whether Defendant was unjustly enriched by its unlawful conduct.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

65. **Predominance**. The common questions of law and fact predominate over questions that affect only individual Class Members.

66. **Typicality**. Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

67. **Adequacy**. Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members. Plaintiff will fairly and adequately protect Class Members' interests and she has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

68. **Ascertainability**. Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

69. **Superiority and Substantial Benefit**. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

   a. The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

   b. Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoys its ill-gotten gains;

   c. Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant

committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

70.    **Inconsistent Rulings**. Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individuals would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

71.    **Injunctive/Declaratory Relief**. The prerequisites to maintaining a class action for injunctive or equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or declaratory relief with respect to the Class as a whole.

72.    **Manageability**. Plaintiff and her counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## VIII. <u>CAUSES OF ACTION</u>

### <u>COUNT ONE</u>

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

***(On Behalf of the California Subclass)***

73.    **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 72, as though fully set forth herein.

74.    **California Subclass**. This cause of action is brought pursuant to Business and Professions Code, sections 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

75.    **The UCL**. California Business & Professions Code, sections 17200, *et seq*. (the

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

"**UCL**") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

76.  **False Advertising Claims**. Defendant, in its advertising and packaging of the Products, made misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Material Omission, the "Microwave Safe" misrepresentation, and the "Freezer" misrepresentation—even though the Products are not fit for their represented use because they leach microplastics when used as intended, directed and instructed. Such misrepresentations and omission appear on the label and packaging of the Products, which are sold at retail stores, as well as Defendant's official website, and other retailers' advertisements that have adopted Defendant's advertisements.

77.  **Defendant's Deliberately Fraudulent Marketing Scheme**. Defendant lacks any reasonable basis for the misrepresentations and omission made about the Products in its advertising, packaging and labeling because the Products are not fit for their intended use. Defendant knew, and continues to know, that the Products pose the Material Risk of microplastic leaching into consumers' food when microwaved and/or frozen during ordinary use. Despite this knowledge, Defendant intentionally marketed, advertised and labeled the Products as "Microwave Safe" and suitable for "Freezer" use to deceive reasonable consumers into believing that the Products are fit for everyday food preparation (microwaving) and storage (freezing). In knowingly omitting the Material Risk of microplastic contamination, while affirmatively representing the Products as fit for microwave and freezer use, Defendant misleads consumers into purchasing Products that pose the Material Risk.

78.  **Exclusive Knowledge**. Defendant has exclusive knowledge of the Products' Material Risk of leaching microplastics. As the manufacturer of the Products, Defendant is in a superior position to consumers, including Plaintiff, to know about the risks associated with microplastic contamination resulting from the microwaving and freezing of the Products. Defendant's control over the manufacturing, design, distribution and integrity testing of the Products gives it unique and exclusive knowledge of the presence of the Material Risk. This superior knowledge places Defendant in a position of responsibility to disclose the Material Risk of microplastic exposure, yet

Defendant deliberately withheld this critical information from consumers while marketing the Products as "Microwave Safe" and suitable for "Freezer" use.

79.    **Misleading Advertising Claims Cause Purchases of the Products**. Defendant's labeling and advertising of the Products led, and continues to lead, reasonable consumers, including Plaintiff, to believe that the Products are a fit and reliable solution for food storage and preparation. Because it markets the Products with the "Microwave Safe" and "Freezer" misrepresentations without disclosing the Material Risk of microplastic contamination, Defendant misleads consumers into believing the Products are fit to be used to microwave or freeze food, reinforcing the false impression that they do not present the Material Risk.

80.    **Injury-in-Fact**. Plaintiff and the California Subclass have suffered injury in-fact and have lost money or property as a result of, and in reliance upon, Defendant's affirmative misrepresentations and Material Omission. Specifically, Plaintiff and the California Subclass paid the purchase price for the Products under the false belief that they were fit for their intended use. Had Defendant disclosed the Material Risk of microplastic contamination, Plaintiff and the California Subclass would not have purchased the Products or would have paid less for them.

81.    **Conduct Violates the UCL**. Defendant's conduct, as alleged herein, constitutes unfair, unlawful and fraudulent business practices in violation of the UCL. Defendant's use of various forms of advertising media to promote, advertise and draw attention to the sale of its Products constitutes unfair competition, deceptive advertising and unlawful business practices under Business and Professions Code Sections 17200 and 17531. Defendant's marketing of the Products with the "Microwave Safe" and "Freezer" misrepresentations while omitting material information about the Material Risk of microplastic contamination, misleads consumers into believing the Products are fit for ordinary use—namely fit for microwave and freezer use. These deceptive practices have deceived, and are likely to continue deceiving, the consuming public in violation of California law.

82.    **No Reasonably Available Alternatives/Legitimate Business Interests**. Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

83.    **Business Practice**. All of the conduct alleged herein occurred, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue daily until Defendant voluntarily alters its conduct or is ordered to do so.

84.    **Injunction**. Pursuant to California Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order from this Court enjoining Defendant from continuing its unlawful practice of labeling, advertising and marketing the Products as "Microwave Safe" and suitable for "Freezer" use, without disclosing the Material Risk of microplastic contamination. Plaintiff and the California Subclass further seek an order requiring Defendant to disclose the truth about the Products, including the Material Risk of microplastic exposure when used as intended, directed and instructed, and to prevent Defendant from continuing to omit this material information from its labeling, advertising and marketing practices.

85.    **Causation/Damages**. As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered, and continue to suffer, economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### *"Unfair" Prong*

86.    **Unfair Standard**. Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403 (2006).

87.    **Injury**. Defendant's practice of labeling the Products as "Microwave Safe" and

35

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

suitable for "Freezer" use, while omitting the Material Risk of microplastic contamination provides no benefit to consumers; rather, it harms them. By concealing this material information, Defendant causes consumers to purchase Products that fail to meet their reasonable expectations, overpay for Products they believed were fit for their marketed use and receive Products that pose a greater risk than what they were led to believe. Consumers are deprived of the ability to make informed decisions and cannot avoid the injuries caused by Defendant's deceptive labeling and advertising. Accordingly, the injuries resulting from Defendant's deceptive conduct far outweigh any purported benefits.

88.     **Balancing Test**. Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

89.     **No Utility**. Here, Defendant's conduct of labeling the Products as "Microwave Safe" and "Freezer," while omitting the Material Risk has no legitimate utility and financially harms consumers. Any potential utility from Defendant's conduct is vastly outweighed by the gravity of the harm caused to consumers, who are unknowingly exposed to the Material Risk of microplastic contamination and unjustly pay a premium for Products that fail to meet their reasonable expectations.

90.     **Legislative Declared Policy**. Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F.3d 718, 735 (9th Cir. 2007).

91.     **Unfair Conduct**. Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading and unreasonable, and constitutes unfair conduct. Defendant knew, or should have known, of its unfair conduct. Defendant's Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation constitute unfair business practices within the meaning of California Business and Professions Code Section 17200.

92.     **Reasonably Available Alternatives**. Reasonably available alternatives existed that would have allowed Defendant to further its legitimate business interests without engaging in the

deceptive conduct described herein. Defendant could have refrained from labeling the Products as "Microwave Safe" and suitable for "Freezer" use, without disclosing the Material Risk. Alternatively, Defendant could have provided clear warnings on the Products' labels to inform consumers of the Material Risk associated with microwaving and freezing the Products as intended, directed and instructed. These reasonable alternatives would have allowed Defendant to market its Products truthfully, while protecting consumers from the undisclosed Material Risk of microplastic exposure.

93.    **Defendant's Wrongful Conduct**. All of the conduct alleged herein occurs, and continues to occur, in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

94.    **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order from this Court enjoining Defendant from continuing its practice of labeling the Products as "Microwave Safe" and suitable for "Freezer" use, without disclosing the Material Risk of microplastic contamination. Plaintiff and the California Subclass request that the Court prohibit Defendant from engaging in these deceptive practices to prevent further harm to consumers.

95.    **Causation/Damages**. Plaintiff and the California Subclass suffered injury in fact, lost money and were exposed to undisclosed and unnecessary microplastics as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products, believing they were fit for their marketed purpose and free from the Material Risk of microplastic exposure. Specifically, Plaintiff and the California Subclass paid for Products they reasonably believed did not pose the Material Risk of microplastic contamination. Had they known the truth, Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for them. Accordingly, Plaintiff and the California Subclass seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

96.    **Fraud Standard**. The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254,

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1267 (1992).

97.    **Fraudulent "Microwave Safe" Misrepresentation, "Freezer" Misrepresentation and Material Omission**. Defendant employed the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The "Microwave Safe" misrepresentation and the "Freezer" misrepresentation are deceptive, and Defendant knew, or should have known, of their deceptive nature. By affirmatively representing the Products as "Microwave Safe" and suitable for "Freezer" use, while omitting the Material Risk that the Products release microplastics when microwaved and frozen, Defendant misled and continues to mislead consumers into believing the Products are fit for their intended use. Both the affirmative misrepresentations and the Material Omission are likely to mislead reasonable consumers, as they pertain to fitness for the marketed use, which is material to the purchasing decisions of the average, ordinary and reasonable consumer.

98.    **Fraudulent Business Practice**. As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

99.    **Reasonable and Detrimental Reliance**. Plaintiff and the California Subclass reasonably and detrimentally relied on the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation to their detriment in that they purchased the Products.

100.    **Reasonably Available Alternatives**. Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as "Microwave Safe" and suitable for "Freezer" use, without disclosing the Material Risk of microplastic contamination. Alternatively, Defendant could have provided clear warnings on the Products' labels to inform consumers of the Material Risk of microplastic exposure associated with microwaving and freezing the Products as intended, directed and instructed.

101.    **Business Practice**. All of the conduct alleged herein occurs, and continues to occur,

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

102.    **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order from this Court enjoining Defendant from continuing its practice of labeling the Products as "Microwave Safe" and suitable for "Freezer" use, without disclosing the Material Risk of microplastic contamination. Plaintiff and the California Subclass further seek an order requiring Defendant to cease its deceptive conduct and to provide clear and conspicuous warnings about the Material Risk of microplastic exposure when the Products are microwaved and frozen as intended, directed and instructed.

103.    **Causation/Damages**. Plaintiff and the California Subclass suffered injury-in-fact, lost money and were exposed to increased risks as a result of Defendant's fraudulent conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products, believing they were absent of the Material Risk. Specifically, Plaintiff and the California Subclass paid for Products they reasonably believed did not pose the Material Risk of microplastic contamination. Had they known the truth, Plaintiff and the California Subclass would not have purchased the Products or would have paid substantially less for them. Accordingly, Plaintiff and the California Subclass seek damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

104.    **Unlawful Standard**. The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

105.    **Violations of CLRA and FAL**. Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "CLRA") and California Business and Professions Code sections 17500, *et seq.* (the "FAL") as set forth below in the sections regarding those causes of action.

106.    **Fraud**. Additionally, Defendant's use of the "Microwave Safe" misrepresentation, the "Freezer" misrepresentation and the Material Omission to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit)

1   and 1711 (deceit upon the public), as set forth herein.

2       107.    **Additional Violations**. Defendant's conduct in making the misrepresentations and

3   deceptive Material Omission described herein constitutes a knowing failure to adopt policies in

4   accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding

5   upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage

6   for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under

7   California Business & Professions Code sections 17200-208. Additionally, Defendant's omission

8   of material facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710,

9   1711 and 1770, as well as the common law.

10      108.    **Unlawful Conduct**. Defendant's packaging, labeling and advertising of the Products,

11  as alleged herein, are deceptive, misleading and unreasonable, and constitute unlawful conduct.

12  Defendant knew, or should have known, of its unlawful conduct.

13      109.    **Reasonably Available Alternatives**. Defendant had reasonably available alternatives

14  to further its legitimate business interests, other than the conduct described herein. Defendant could

15  have refrained from labeling the Products as "Microwave Safe" and suitable for "Freezer" use,

16  without disclosing the Material Risk of microplastic contamination. Alternatively, Defendant could

17  have provided clear warnings on the Products' labels to inform consumers of the Material Risk

18  associated with microwaving and freezing the Products as intended, directed and instructed.

19      110.    **Business Practice**. All of the conduct alleged herein occurs, and continues to occur,

20  in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of

21  conduct.

22      111.    **Injunction**. Pursuant to Business and Professions Code Section 17203, Plaintiff and

23  the California Subclass seek an order from this Court enjoining Defendant from continuing its

24  practice of labeling the Products as "Microwave Safe" and suitable for "Freezer" use, without

25  disclosing the Material Risk of microplastic contamination. Plaintiff and the California Subclass

26  further seek an order requiring Defendant to cease its deceptive conduct and to provide clear and

27  conspicuous warnings about the Material Risk of microplastic exposure when the Products are

28  microwaved and frozen as intended, directed and instructed.

1     112.  **Causation/Damages**. Plaintiff and the California Subclass suffered injury-in-fact,

2  lost money and were exposed to increased risks as a result of Defendant's unlawful conduct.

3  Plaintiff and the California Subclass paid an unwarranted premium for the Products, believing they

4  were fit for their marketed use and free from the Material Risk of microplastic exposure.

5  Specifically, Plaintiff and the California Subclass paid for Products they reasonably believed did

6  not pose the Material Risk of microplastic contamination. Had they known the truth, Plaintiff and

7  the California Subclass would not have purchased the Products or would have paid substantially

8  less for them. Accordingly, Plaintiff and the California Subclass seek damages, restitution and/or

9  disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

***(On Behalf of the California Subclass)***

14     113.  **Incorporation by reference**. Plaintiff re-alleges and incorporates by reference

15  paragraphs 1 through 72, as though fully set forth herein.

16     114.  **California Subclass**. Plaintiff brings this claim individually and on behalf of the

17  California Subclass who purchased the Products within the applicable statute of limitations.

18     115.  **FAL Standard**. The False Advertising Law, codified at Cal. Bus. & Prof. Code

19  section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]" (hereinafter

20  the "**FAL**").

21     116.  **Material Omission, the "Microwave Safe" Misrepresentation and the "Freezer"**

22  **Misrepresentation Disseminated to the Public**. Defendant violated Section 17500 when it

23  advertised and marketed the Products through the unfair, deceptive and misleading omission

24  disseminated to the public via the Products' labeling, packaging and advertising. The Material

25  Omission was deceptive because the Products do not conform to the representations made, including

26  the affirmative "Microwave Safe" and "Freezer" misrepresentations. The Material Omission was

27  material because it is likely to, and did, mislead reasonable consumers into purchasing the Products

28  under the false belief that they were fit for their intended use and free from the Material Risk of

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

microplastic contamination.

117.    **Knowledge**. In making and disseminating the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation alleged herein, Defendant knew, or should have known, that the Material Omission, "Microwave Safe" misrepresentation and the "Freezer" misrepresentation were untrue or misleading and thereby acted in violation of California Business and Professions Code section 17500. Defendant's affirmative misrepresentations that the Products are "Microwave Safe" and suitable for "Freezer" use, combined with its failure to disclose the Material Risk of microplastic contamination, constitute deceptive practices that Defendant knew, or should have known, were false and likely to mislead reasonable consumers.

118.    **Exclusive Knowledge**. Defendant has exclusive knowledge of the Products' danger of leaching microplastics when microwaved and/or frozen as intended, directed and instructed. As the manufacturer of the Products, Defendant is in a superior position to consumers, including Plaintiff, to know about the risks associated with microplastic contamination. Defendant's control over the manufacturing, design, distribution and testing of the Products provides it with exclusive knowledge of the presence of the Material Risk. This superior knowledge placed Defendant in a position of responsibility to disclose the Material Risk of microplastic exposure, yet Defendant deliberately withheld this critical information while affirmatively marketing the Products as "Microwave Safe" and suitable for "Freezer" use.

119.    **Intent to sell**. Defendant's Material Omission, "Microwave Safe" misrepresentation and "Freezer" misrepresentation were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

120.    **Causation/Damages**. As a direct and proximate result of Defendant's misconduct, in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Additionally, Plaintiff and members of the California Subclass have suffered, and continue to suffer, economic losses and other damages, including but not limited to, the amounts paid for the Products and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in the form of damages, restitution and/or disgorgement of ill-gotten

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

gains to compensate Plaintiff and the California Subclass. Plaintiff also seeks injunctive relief to enjoin Defendant's misconduct and prevent ongoing and future harm to consumers.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

121. **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 72, as though fully set forth herein.

122. **California Subclass**. Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

123. **CLRA Standard**. The California Consumers Legal Remedies Act provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful." (hereinafter the "CLRA").

124. **Goods/Services**. The Products are "goods," as defined by the CLRA in California Civil Code § 1761(a).

125. **Defendant**. Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

126. **Consumers**. Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

127. **Transactions**. The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

128. **Violations of the CLRA**. Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive and fraudulent Material Omission, "Freezer" misrepresentation and "Microwave Safe" misrepresentation:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . .

uses [or] benefits . . . which [they] do not have."

    b.   Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade…when] they are of another."

    c.   Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

129.   **Knowledge**. Defendant's uniform misrepresentations and Material Omission of the Material Risk regarding the Products were likely to deceive reasonable consumers. Defendant knew, or should have known, that its Material Omission of the Material Risk that the Products release microplastics when microwaved or frozen, along with its affirmative "Microwave Safe" and "Freezer" misrepresentations, were misleading and deceptive. By failing to disclose this Material Risk, Defendant misled consumers into believing the Products were fit for their use as intended, directed and instructed.

130.   **Exclusive Knowledge**. Defendant has exclusive knowledge of the Products' Material Risk of leaching microplastics. As the manufacturer of the Products, Defendant is in a superior position to consumers, including Plaintiff, to know about the risks associated with microplastic contamination. Defendant's control over the manufacturing, design, distribution and testing of the Products gives Defendant exclusive knowledge of the presence of the Material Risk. This superior knowledge placed Defendant in a position of responsibility to disclose the Material Risk of microplastic exposure when microwaving and freezing the Products as intended, directed and instructed, yet Defendant concealed this critical information while affirmatively marketing the Products as "Microwave Safe" and suitable for "Freezer" use.

131.   **Malicious**. Defendant's conduct is malicious, fraudulent and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

132.   **Plaintiff Could Not Have Avoided Injury**. Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were misled and unaware of the existence of facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

133.  **Causation/Reliance/Materiality**. Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation in deciding to purchase the Products. The Material Omission, the "Microwave Safe" misrepresentation and the "Freezer" misrepresentation were together a substantial factor. The Material Omission and "Microwave Safe" misrepresentation and the "Freezer" misrepresentation were and are material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

134.  **Section 1782(d)**. Pursuant to California Civil Code, Section 1782, Plaintiff's counsel, acting on behalf of all members of the Class, concurrent with the filing of this complaint mailed a statutory notice letter, via U.S. Certified Mail, return receipt requested, addressed to Defendant at its headquarters, principal place of business and registered agent for service of process registered with the Wisconsin Department of State (1525 Howe Street Racine, WI 53403). The letter notified Defendant of its violations of section 1770 described herein and demanded that it correct the problems associated with the actions detailed herein and give notice to all affected consumer of Defendant's intent to do so. If Defendant does not agree to rectify the problems identified and give notice to all affected consumers within 30 days of the date of written notice, Plaintiff will amend this complaint to seek actual, punitive and statutory damages, as appropriate.

135.  **Venue Declaration**. A declaration establishing that venue in this District is proper pursuant to Cal. Civ. Code § 1780(d) was filed with the complaint on April 25, 2025. *See* ECF No. 1-001.

136.  **Injunction**. Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception created, facilitated and fostered by Defendant's false and misleading advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction pursuant to section 1780(a)(2) to enjoin Defendant from continuing its unlawful methods, acts and practices, including its deceptive labeling of the Products as

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

"Microwave Safe" and suitable for "Freezer" use, while omitting the Material Risk of microplastic contamination. Plaintiff also seeks an order requiring Defendant to take corrective action necessary to dispel the public misperception created by Defendant's deceptive conduct and to provide clear and conspicuous disclosures about the Material Risk posed through microwaving and freezing the Products as intended, directed and instructed.

## COUNT FOUR

### Unjust Enrichment/Restitution

**(*On Behalf of the Nationwide Class and, in the alternative, the California Subclass*)**

137.  **Incorporation by Reference**. Plaintiff re-alleges and incorporates by reference all paragraphs 1 through 72, as though fully set forth herein.

138.  **Nationwide Class & California Subclass**. Plaintiff brings this claim individually and on behalf of the Nationwide Class and, in the alternative, the California Subclass who purchased the Products within the applicable statute of limitations.

139.  **Plaintiff/Class Conferred a Benefit**. By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

140.  **Defendant's Knowledge of Conferred Benefit**. Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

141.  **Exclusive Knowledge**. Defendant has exclusive knowledge of the Products' Material Risk to leach microplastics. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the Material Risk. Defendant's control of the manufacturing, design, distribution and testing of the Products gives Defendant exclusive knowledge of the presence of the Material Risk.

142.  **Defendant's Unjust Receipt Through Deception**. Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading and deceptive omission.

143.  **Causation/Damages**. As a direct and proximate result of Defendant's unjust

46

enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Additionally, Plaintiff and members of the Class suffered, and continue to suffer, economic losses and other damages, including but not limited to, the amounts paid for the Products and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award in the form of damages, restitution and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for these losses. Plaintiff also seeks injunctive relief to enjoin Defendant's misconduct and prevent ongoing and future harm to consumers.

## IX.   PRAYER FOR RELIEF

144.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.   **Certification**: For an order certifying this action as a class action, appointing Plaintiff as the Class Representative and appointing Plaintiff's Counsel as Class Counsel;

b.   **Declaratory Relief**: For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c.   **Injunction**: For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Products in violation of law; enjoin Defendant from continuing to market, advertise, distribute and sell the Products in the unlawful manner described herein; require Defendant to add appropriate warning labels or engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and take all further corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d.   **Damages/Restitution/Disgorgement**: For an order awarding monetary compensation in the form of damages, restitution and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e.   **Punitive Damages/Penalties**: For an order awarding punitive damages, statutory penalties and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f.   **Attorneys' Fees & Costs**: For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g.   **Pre/Post-Judgment Interest**: For an order awarding pre-judgment and post-

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h.  **All Just & Proper Relief**: For such other and further relief as the Court deems just and proper.

## X.  DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Dated: April 25, 2025                              **CLARKSON LAW FIRM, P.C.**

                                                   */s/ Bahar Sodaify*
                                                   Ryan J. Clarkson
                                                   Bahar Sodaify
                                                   Alan Gudino

                                                   **PEARSON WARSHAW, LLP**
                                                   Melissa S. Weiner (*PHV forthcoming*)
                                                   Ryan T. Gott (*PHV forthcoming*)
                                                   328 Barry Avenue S., Suite 200
                                                   Wayzata, Minnesota 55391
                                                   Tel: (612) 389-0600
                                                   Fax: (612) 389-0610
                                                   mweiner@pwfirm.com
                                                   rgott@pwfirm.com

                                                   *Attorneys for Plaintiff*